**LEY v. PATTON.**

No. 2739.

Court of Civil Appeals of Texas. Beaumont.
April 23, 1935.

Rehearing Denied May 1, 1935.

Fogle & Holden, of Houston, and S. A. McCall, of Conroe, for appellant.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellee.

O'QUINN, Justice.

Patton sued Ley in the district court of Montgomery county in the nature of trespass to try title to 72.94 acres of land, and in the alternative for specific performance of a contract or agreement to convey to him the land. We shall not undertake to set out the substance of the various pleadings of the parties, but will discuss the questions raised and presented.

The record reflects that on January 18, 1923, Ley sold to Patton a tract of 72.94 acres of land situated in Montgomery county, Tex., in part payment for which Patton executed his vendor lien note payable to Ley in the sum of $500, due six months after date, bearing interest at the rate of 9 per cent. per annum, and contained the usual 10 per cent. attorney's fee collection clause. Various payments were made on the note up to May 26, 1927, when the note and lien were extended to mature on January 18, 1928, the note to bear 10 per cent. interest after said date, after which date various other payments were made leaving a balance due on October 18, 1929, of $226.50. No other payments were made up to January 18, 1932, when the sum of $47.36 was due as interest, making a total of principal and interest due at that date of $273.86. On January 15, 1932, Patton, still owing Ley said balance on the land, executed and delivered to Ley a general warranty deed to the land in consideration of "$10.00 and other considerations." Patton alleged and testified that this deed was given and intended and accepted as a mortgage to secure the payment of the balance due on the vendor's lien note, and that at said date Ley agreed in writing to reconvey said land to him at any time within thirty days upon the payment to him by Patton of $300 with 10 per cent. interest and the cost of recording the deed from Patton to Ley. This instrument is not denied by Ley, and appears in the record. It bore the same date as the deed, January 15, 1932. February 15, 1932, Patton paid $100 on the balance of the note, leaving $200 unpaid. This payment was in accordance with a telephone conversation with Ley, and the time for payment of the balance was then extended to May 23, 1932. On May 23, 1932, an agreement was reached extending the time for payment to June 5, 1932, and Ley's attorney wrote Patton a letter addressed to him at Overton, Tex., confirming the agreement to extend, and inclosed a letter for Patton to sign and return with a check dated June 5, 1932, for $216.12; that being the amount of principal and interest that would be due on June 5th, including in said amount $10 as an attorney's fee which Patton had agreed to pay. Patton testified that he did not get the letter until June 4th. He did not sign and return the letter. On June 5th, Patton was at Overton and tried to get Ley on the phone, but failed. He then on that date went to Houston, Tex., where Ley lived and was in business, prepared to pay Ley the amount due on that day, $216.12. June 5th was on Sunday. He testified that on that

day, June 5th, he tried to get in touch with Ley, both at his office and at his home, but failed. That he phoned to Ley's residence several times, but could not get any one. That the next day, Monday, June 6th, he again tried to contact Ley by going to his place of business, by calling his residence over the telephone, and by going to his attorney's office, but could not reach him. That on the next day, Tuesday, June 7th, he contacted Ley and tendered to him the full amount he had agreed to pay and demanded a deed to the land, but Ley refused to accept the payment. Ley does not deny but admits that the tender was made, but says that the right of Patton to pay and get a reconveyance of the land expired on May 23, 1932, as Patton had not signed and returned the letter with check as suggested in the letter of Ley's attorney to Patton.

The case was tried to a jury upon special issues in answer to which they found that on May 23, 1932, the agreement for the payment of the money due under the contract of the parties was extended to June 5, 1932; that on June 5th, and June 6th, Patton was able, ready, and willing to pay the balance due on June 5th and June 6th; that Patton used reasonable diligence to pay to Ley the balance due on the contract on June 5th and June 6th; and that Patton's failure to pay Ley the balance due on their contract on June 5th and on June 6th was due to the fault of Ley. Upon these answers of the jury, judgment was rendered in favor of Patton for the title and possession of the land involved, and that the clerk of the court pay to Ley the amount of $216.12, which Patton had deposited with the court, in full discharge of the amount due by Patton to Ley on said contract or option, and adjudged all costs of suit against Ley. This appeal is from that judgment.

We overrule appellant's assignment to the effect that the court erred in refusing to instruct a verdict for him because the evidence showed that the time in which appellee could exercise his option to repurchase the land had been extended to May 23, 1932, and he had failed to exercise his option within that time, and the option had not been extended beyond said date. On May 23, 1932, the date to which payment of the debt had been extended, Patton went to Ley's office and there saw Ley and his attorney. He testified:

"Q. This letter is dated May 23rd, 1932, did you see Mr. Ley on that date? A. I went to his office on this date, May 23rd, and had

arrangements made to pay him the rest of the money.

"Q. I asked did you see him that day. A. Yes; and Mr. Fogle, too.

"Q. What time of the day on May 23rd, 1932, did you see him? A. If I remember it was in the afternoon part of that day.

"Q. Was he at his office? A. Yes, sir.

"Q. Now, Mr. Patton, at that time I will ask you to state whether or not you had any conversation with Mr. Ley with reference to paying the balance due of $300.00—that is, the balance due on the obligation of $300.00. A. Yes, sir, we had the understanding that I owed him—a balance of $200.00, and I said, 'now, you fix up a check and I will go ahead and sign this check.' It was due on June 5th, 1932.

"Q. And they agreed to do that? Did Mr. Ley agree to extend the payment of the balance to June 5th, 1932? A. Yes, sir.

"Q. Did you agree to accept an extension to June 5th, 1932? A. Yes, sir. Mr. Fogle said: 'It is getting late and I have to add my attorney's fee and all', and he said, 'I will tell you what I will do, I will mail it to you so that you will get it—.' I told him all right.

"Q. For the extension to June 5th, did you agree to pay Mr. Fogle's attorney's fee? A. Yes, I did. Whatever they thought was right about it. I thought I had paid them attorney fees once or twice—and for them just to put it in there.

"Q. When you went to see him (Ley) on May 23rd, according to his letter when your option was extended what conversation did you have with him in reference to paying the money? A. I told him on that date that I had arrangements made for getting the money and I could go down and get it from Mr. Cochran. I said 'I owe the old man now and if it is all right I had rather pay you fellows interest'.

"Q. Had you made arrangements with Mr. W. S. Cochran to borrow the money on May 23rd, to pay off the balance due on it? A. Yes, sir.

"Q. Had it not been for Mr. Ley's promise and agreement to extend the time (to June 5th) you would have paid him on (May 23rd) 1932? A. Yes, sir."

And again:

"Q. On May 23rd, 1932, tell the jury whether Mr. Ley agreed to extend the time of the option to June 5th, 1932, and tell the jury whether you accepted the extension as made. A. I did."

And again:

"Q. Mr. Patton tell this jury whether or not it was definitely agreed and understood by you and Mr. E. V. Ley on May 23rd, 1932, and Mr. Lewis Fogle that your option to repurchase was extended until June 5th, 1932? A. It was."

As to why he did not sign the letter sent him by counsel for Ley and return same with check dated June 5, 1932, as evidence that he had accepted the agreement to extend the time of payment of the balance due Ley with interest to June 5, 1932, he testified that he was expecting some such letter, but only for the purpose of verifying the agreement for the extension, not as evidence that he had accepted the agreement for extension, for he said that he absolutely did accept the extension, and upon the terms mentioned. On cross-examination, he testified:

"Q. Did I understand that you were to sign a letter that was to be sent to you? A. Not particularly. You didn't say anything about for me to sign that letter.

"Q. Didn't you say a while ago that you were expecting a letter with an enclosure to be signed by you? A. I was expecting a letter to verify our agreement.

"Q. Didn't you say a while ago that you expected to get a letter from me enclosing one which was to be signed by you? A. I was expecting to get a letter verifying our agreement."

He also testified that he was very busy out in the oil field, and that the first he knew of the letter was on June 4th, and it being so late when he got the letter he thought the best thing for him to do was to "bring the money" which he did the next day, June 5th, the date of payment under the extension. He further testified that if Ley had not agreed to the extension to June 5th, he would have paid Ley the full balance on May 23d, the day the extension to June 5th was made. It appears, and it is not disputed, that the $216.-12 named in the letter as the sum due by Patton to Ley to be paid on June 5th, included $10 as attorney's fee to be paid by Patton to Ley's attorney, Fogle. This amount was included in the tender by Patton to Ley, and finally paid by him into the court. Appellant and his attorney, Mr. Fogle, both, in effect, testified that the agreement of May 23d, to extend the time of payment to June 5th, was to be in writing, and that Patton was to sign a check for $216.12, the amount that would be due on June 5th, including attorney's fee of $10, the check to be dated June 5, 1932, evidencing the agreement of exten-

sion, and that Patton did not sign any such agreement nor mail to them any such check.

It is seen that the evidence raised the issue as to whether there was an agreement to extend the time of payment to June 5, 1932, and in answer to an issue properly submitted the jury found that such agreement and extension was made, and we think the evidence abundantly supports this finding.

■■ The contention that the extension of time in which to make payment to June 5th, not being in writing, was void under the statute of frauds (Vernon's Ann. Civ. St. art. 3995) is not well taken. This was not a contract for the sale of land, but only an agreement that if appellee paid the balance he owed on the original purchase of the land from appellant, appellant would reconvey the land to appellee; it having been conveyed to appellant by appellee because of not meeting deferred payments, with the understanding and agreement in writing that upon the payment of the balance the land would be redeeded to him. It was simply an extension of time in which to make payments, and not a contract of purchase. Moreover, the original agreement, that upon payment the land would be reconveyed by appellant to appellee, was in writing, and a mere extension of time in which to make payment did not affect the original agreement, nor was it, the agreement for extension, such an undertaking as brought it within the statute of frauds. Bullis v. Presidio Mining Co., 75 Tex. 540, 552, 12 S. W. 397; Texas Co. v. Burkett (Tex. Civ. App.) 255 S. W. 763; Watkins v. Arnold (Tex. Civ. App.) 60 S.W.(2d) 476. Furthermore, it is believed that when Patton, being unable to make payment of the balance due on the vendor's lien note to Ley, conveyed the land to Ley, with the written agreement that, if he paid the balance due on the note within a certain time, Ley would convey the land back to him, that Ley took the title to the land in trust for appellee, that such agreement was not within the statute of frauds, Lucia v. Adams, 36 Tex. Civ. App. 454, 82 S. W. 335; Matthews v. Deason (Tex. Civ. App.) 200 S. W. 855; Gardner v. Randell, 70 Tex. 453, 7 S. W. 781, and an oral extension of the time in which to pay the balance due would not bring the contract within the statute of frauds, but appellant still held the land in trust subject to any extension made by the parties. Lucia v. Adams, 36 Tex. Civ. App. 454, 82 S. W. 335.

■ The contention that if the agreement to extend the time of payment to June 5th was made, it was without consideration and therefore unenforceable, is without merit. It is without dispute that appellee agreed to pay an attorney's fee of $10 in securing the extension. This was a benefit to appellant, getting his attorney paid by another, and a detriment to appellee; a sum he would not have had to pay but for securing the extension. This was a good and sufficient consideration to support the agreement for the extension. And, too, as the note bore interest at the rate of 10 per cent. per annum, and appellee promised to pay the principal and the interest which would accrue to the date of payment, June 5th, a certain and definite time for payment, this would be a valuable consideration supporting the contract of extension. Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128.

■■ We overrule appellant's assignment that the court erred in submitting the case to the jury because, if appellee had the option to pay on June 5th, all the evidence showed that he failed to exercise his option and had failed to comply with same within the time stipulated. June 5, 1932, fell on Sunday. This was the last day, under the extension agreement, for payment to be made. It is well settled that where the last day for the performance of a contract, such as here for the payment of money, happens to fall on Sunday, the party has until the succeeding day, Monday, to perform the obligation or pay the money. Hirshfield v. Ft. Worth Nat. Bank, 83 Tex. 452, 18 S. W. 743, 15 L. R. A. 639, 29 Am. St. Rep. 660; Semans v. Adams (Tex. Civ. App.) 228 S. W. 353; Armstrong v. McGough, 157 Ark. 173, 247 S. W. 790, 29 A. L. R. 236. Under the law, appellee had all day Monday, June 6th, in which to perform his obligation. He was at Houston, where appellant resided and had an office, on Sunday June 5th, and in various ways tried to contact appellant, but failed. On Monday, June 6th, he vainly endeavored to contact appellant, going to his office, phoning to his residence, and going to the office of his attorney, but to no avail. On the morning of June 7th, he finally got in touch with appellant and tendered payment in full to him, which was refused on the ground that the payment was due on June 5th, and hence the tender came too late, the option having expired on Sunday the 5th. The jury found that the failure of appellee to make payment on Sunday the 5th and on Monday the 6th, was due to no fault of his, but was caused by appellant. The evidence fully supports this finding.

■ As corroborating his testimony that he was endeavoring to contact appellant by long distance phone on June 5th, appellee offered itemized telephone bill showing him charged

with a call to Houston on June 5th, and over the objections of appellant it was admitted. This is assigned as error. If it be conceded that the evidence was not admissible, it was harmless error. The same evidence was given by the witness Eargle, a clerical employee in the office of appellee, who was with appellee at Overton when the call was put in, and also went with appellee to Houston on June 5th, and was with him all that day and the 6th and 7th of June, when appellee was in various ways endeavoring to contact appellant.

■ Appellant assigns error against the refusal of the court to give his requested special issues Nos. 1 and 2. These issues, in substance, inquired whether the agreement of May 23d to extend the time for payment of the balance due by appellee to appellant to June 5th was conditioned upon appellee's promptly signing a letter which was to be sent to appellee by appellant's attorney, and returning same together with a check for $216.12, dated June 5, 1932. We think the issues were properly refused. In the first place it is not believed that the pleadings raised the issues. Appellee, plaintiff, pleaded that by mutual agreement the time for payment was extended to June 5th. Appellant, defendant, answered by general denial, plea of not guilty, and specially that on about February 20, 1932, appellee paid $100, and thereafter the time for payment was extended to May 23, 1932, and appellee gave notice in writing "that unless said balance was paid by the 23rd day of May, 1932, the option to repurchase would not be further extended; no further payments were made by plaintiff to defendant, and the option to purchase expired on May 23rd, 1932, in accordance with the terms of said extension." Appellant's answer did not contain any allegation to the effect that for the agreement to extend the time for payment to June 5th to have been in force it must have been and was agreed to be in writing, nor that any promise on his part to extend the right to pay to June 5th was conditioned upon appellee's signing a letter or any instrument and returning same to appellant. His defense was that the time for payment was extended to May 23, 1932, and appellee not having paid at that time, the option or right to pay ended on that date. Next, it having been alleged by appellee that it was mutually agreed by the parties that the time of payment was extended to June 5th, and appellant answering this by general denial, the issue was joined, and this issue was submitted to the jury and answered by them in the affirmative. The assignments are overruled.

■ Appellant complains that the court erred in refusing to submit his special requested issue No. 4. It reads: "Do you find from a preponderance of the evidence that the failure on the part of plaintiff H. L. Patton, to pay or tender to the defendant, E. V. Ley, the balance due on said option on June 5th, 1932, was due to the fault of plaintiff, H. L. Patton."

The assignment is overruled. We do not believe that the issue was raised by the pleadings, but if so, and the issue had been submitted and the jury had answered it favorable to appellant, such finding would have been without support in the evidence. It is undisputed that appellee arrived in Houston about noon on Sunday, June 5th, and that he at once made every reasonable effort to locate and get in touch with appellant, and could not. June 5th, the due date of the payment, was on Sunday. Appellee had all of the next day in which to make payment, and it is also without dispute that he all that day made continuous efforts to find appellant, going to his office, phoning his residence, going to his attorney's office, and making inquiry for appellant—these efforts being several times repeated without avail—and finally on the next day, Tuesday, June 7th, contacted appellant and duly made tender of the full amount due, including a fee for appellant's attorney, which tender appellant promptly refused to accept. We think we have mildly stated the undisputed evidence as to appellee's efforts to pay the debt, and that all the record shows him unrelaxing in his efforts to do so. We repeat that we do not believe the pleadings raise such issue, and certainly the evidence does not, but to the contrary would not in the least support any such finding.

■ We overrule appellant's assignment that the court erred in submitting special issue No. 1, inquiring whether on May 23, 1932, the parties mutually agreed to extend the time in which appellee could pay appellant the balance due to June 5, 1932, for the reasons: "The same being upon the weight of the evidence, and there being no evidence in the record to support an affirmative answer thereto."

The issue was raised by the pleadings, was not on the weight of the evidence, and has ample support in the evidence. Moreover, appellant did not, on the trial, urge any such objections or exceptions to special issue No. 1, as are here presented.

The only exception to said issue made by appellant reads: "Defendant excepts to Spe-

.cial Issue No. 1; because there is no evidence of any legal or valid extension of the option to repurchase the land in controversy."

Not having on the trial, made the objections to said issue as he here presents, he is without right to urge same. Article 2185, R. S. 1925; Pryor & Wilson v. Moody (Tex. Civ. App.) 49 S.W.(2d) 506; Saenger v. Dallas Ry. & Terminal Co. (Tex. Civ. App.) 67 S.W. (2d) 351; Fidelity & Guaranty Fire Corp. v. Ormand (Tex. Civ. App.) 62 S.W.(2d) 675.

No reversible error appearing, the judgment should be affirmed, and it is so ordered.

Affirmed.