Myrtle MESSER et al., Appellants,

v.

Esther JOHNSON, Appellee.

No. 7706.

Court of Civil Appeals of Texas.

Amarillo.

April 24, 1967.

Rehearing Denied May 29, 1967.

Allen & Allen, Perryton, Gibson, Ochsner, Harlan, Kinney & Morris, J. Hadley Edgar, Jr., Amarillo, of counsel, for appellants.

Gene E. Steed, Perryton, Linn & Helms, Richard N. Countiss, Spearman, of counsel, for appellee.

NORTHCUTT, Justice.

This is a suit in the nature of trespass to try title and for construction of a will. On August 9, 1943, John E. Johnson and Pearl Johnson were husband and wife and at which time they purchased the land here in question from H. T. Smith, individually and as community administrator of the community estate of himself and deceased wife, Lillian V. Smith, for the consideration of $12,480.00. John E. Johnson's name also appeared as grantor and he also signed the deed and acknowledged that he executed the same for the purposes and consideration therein expressed. The deed as expressed in both the granting and habendum clauses was to Pearl Johnson as her sole and separate estate and to her sole and separate use. Pearl Johnson died testate in 1961 and under the terms of her will John E. Johnson was named the independent executor under the will and J. E. Johnson was given all of Pearl's personal property and was given, devised and bequeathed the control, use, possession, proceeds and income from all the real property of every description, howsoever acquired and wherever situated that she might die seized and possessed at the time of her death for and during his lifetime. John E. Johnson was also given the right to sell or mortgage any portion of Pearl's real estate that might be necessary for his comfortable support. The will then provided that after the death of John E. Johnson she devised all of her real estate to other parties and those parties so far as this appeal is concerned are the nieces and nephews of Pearl Johnson. John E. Johnson filed this suit in trespass to try title against these defendants and to construe Pearl Johnson's will, seeking to establish community ownership because John E. Johnson and Pearl Johnson intended that the land should be community property and it was intended that Pearl Johnson have title to the land as trustee for the community estate on the theory of resulting trust. John E. Johnson transferred all his interests in the real property here involved to his present wife, Esther Johnson, and she was substituted as party plaintiff.

Esther Johnson, hereinafter referred to as plaintiff, contended the real estate here involved was the community property of John E. Johnson and Pearl Johnson and all of the parties interested in this appeal, hereafter referred to as defendants, contended the real estate was the separate property of Pearl Johnson.

The case was tried to a jury upon four special issues. In answer to those issues the jury found (1) that at the time the land in question was conveyed to Pearl Johnson that John E. Johnson and Pearl Johnson intended that such land would be community property of John E. Johnson and Pearl Johnson, (2) that the land in question under the title thereto was conveyed to Pearl Johnson in trust for the use and benefit of Pearl Johnson and John E. Johnson, (3) that John E. Johnson knew the contents of the will of Pearl Johnson dated October 13, 1959, and (4) that John E. Johnson knew the contents of the will of Pearl Johnson on October 13, 1959.

Judgment was entered upon the verdict of the jury as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Section Fifty (50), Block Eleven (11), W. Ahrenbeck and Brothers Survey, Ochiltree County, Texas, was the com-

munity property of John E. Johnson and his deceased wife Pearl Johnson, and that, upon the death of Pearl Johnson, the last will and testament of Pearl Johnson gave John E. Johnson a life estate in the community interest of Pearl Johnson in said land and the power to sell or mortgage any portion of Pearl Johnson's interest in said land that may be necessary for his comfortable support and the authority to execute deeds of conveyance, or mortgages or deeds of trust to secure any lender or lenders, as the case may be, of any portion of Pearl Johnson's interest that John E. Johnson may find it necessary to sell for his said support; therefore, upon the death of Pearl Johnson, John E. Johnson was the owner in fee simple of an undivided one-half interest in said land and the owner of a life estate with the foregoing powers in the remaining undivided one-half interest in said land, and by virtue of a conveyance to Esther Johnson from John E. Johnson, Esther Johnson is now the owner in fee simple of an undivided one-half interest in said land and the owner of the life estate of John E. Johnson in the remaining undivided one-half interest in said land."

From that judgment the defendants perfected this appeal.

Although the defendants assign 49 points of error in this appeal, they are grouped under five subdivisions and state only three or four basic propositions of law. As we view the matters here involved they are the effect of John E. Johnson's signing the deed with H. T. Smith, deeding the land to Pearl Johnson as her separate property; the recitation in the deed making the property the separate property of Pearl Johnson; the admissibility of evidence and the sufficiency of the evidence to sustain the findings of the jury.

■ Plaintiff and defendants both introduced in evidence the deed to Pearl Johnson. Plaintiff introduced the check signed by John E. Johnson to H. T. Smith in the sum of $12,445.72, for Section 50, Block 11. Plaintiff introduced certificates showing that John E. Johnson paid all the taxes on said property. John E. Johnson's first wife was Bell Sheare and to that marriage was born two children, a girl who died in infancy and a son by the name of Samuel Homer Johnson. John E. Johnson testified that Samuel was very unruly and very hard and money-mad and that Samuel had threatened him and that he and his wife, Pearl Johnson, were afraid of Samuel and he put this land in Pearl's name so that if he had disappeared, she would have had something to have lived on. John further testified he discussed with his wife, Pearl, that he believed he would put the land in her name in order if he got "bumped off" she would have something to go on and that Samuel couldn't touch her. Mrs. W. E. DePugh, a very close friend of Pearl Johnson, testified that she and Pearl Johnson discussed such matters and that Pearl told her why this land was in Pearl's name; that Pearl stated John had placed this property in Pearl's name because of Samuel, that they were very much afraid after the kind of life Samuel had lived there might be an heir of his or some woman he may have married come in and lay claim to some of the property. Ray Batman, a longtime acquaintance of John E. Johnson, testified he knew the reputation of Samuel was bad and knew both Pearl and John E. Johnson were afraid of Samuel and that anyone that knew him was afraid of him and that he had a long criminal record. He further testified they discussed about Samuel causing a lot of static and they thought best to put it in Pearl's name and so John E. was willing to let Pearl take it in her name. Cecil Teavis testified he rented the land from John E. Johnson since about 1954 and never dealt with Pearl Johnson and she never made any declarations to him that it was her property. They had the land in the government program and Mr. Johnson signed the papers for the government program but Mrs. Johnson never did sign

any of the government papers. Jack Todd testified he knew Samuel's reputation and that Samuel couldn't stay out of trouble. He was charged with crime many times in his adult life and that he died in Folsom Prison. Todd testified on cross-examination that Samuel stopped by Todd's place in 1942 or '43 and had another fellow with him and he told Todd he was going out and settle with John E. Johnson the estate that day.

■ When John E. Johnson signed the deed with H. T. Smith transferring the property to Pearl Johnson as her separate property he had no interest in the property and could transfer no interest in the land. He could not give the property to her because he had nothing to give, then the only consideration that could be given to the fact that he signed the deed would be whether he was confirming the property to be her separate property. We think the record in this case clearly shows why the property was deeded to Mrs. Johnson as her separate property. Her declarations may be shown as to show she held the property in trust for the community. Nagel v. Kiibler, 212 S.W.2d 1009 (Tex.Civ.App.-Galveston, 1948, writ ref'd n. r. e.) and authorities there cited.

It is stated in Addison v. Ball, 262 S.W. 877 (Tex.Civ.App.-Fort Worth, 1924, writ dism'd) that it is a well settled rule of law in Texas that a trust in lands can be shown by parol evidence and in determining that issue testimony as to the facts and declarations of all parties to the deed in the transaction which lead up to its execution and also the subsequent acts and declarations of the grantee named in the deed. See also Southern Pine Lumber Company v. Hart, 161 Tex. 357, 340 S.W.2d 775 (1960); Sanders v. Worthington, 382 S.W.2d 910 (Tex.1964).

■ The courts of this state have clearly made a distinction in the admissibility of parol evidence where the consideration expressed in writing is not a mere recital but is contractual in nature. Where a deed shows the consideration was paid from the grantee's separate estate or was to be paid from grantee's separate estate, parol evidence is not admissible in the absence of fraud, accident or mistake. In the case of Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825 (1900) in the deed to Mrs. Kahn from Mr. Kahn the granting clause recited a consideration of $500 paid by Mrs. Kahn out of her separate funds and for her separate use and benefit. There is clearly a difference in the Kahn case and the case here involved. It is stated in Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777 (1952) as follows:

"We agree with the holding of the Court of Civil Appeals that, as a matter of law, the title to the two lots, under the contract and deed, vested in Mrs. Frances M. Lindsay as her separate property and estate.

"The recitation contained in the contract and deed are to all intents and purposes the same as that in the deed construed in Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825, 826, 827. In that case this Court said 'The decisions do clearly establish the proposition that the intent to make the property conveyed the separate property of the wife may be shown not only by words of conveyance to her sole and separate use, but by recitals of a consideration such as would, if moving from her, give such a character to it. There can, therefore, be no doubt that the deed before us upon its face unequivocally expresses the purpose of Kahn to convey to his wife in her separate right, and he cannot be permitted, consistently with correct principles, to show that he did not so intend. *The evidence admitted does not come within the rule which sometimes permits the true consideration of an instrument to be shown to have been different from that recited. This principle, properly applied, admits the evidence where the consideration has been stated as a fact, but not where the recital is*

*contractual in its nature.'"* (Emphasis ours.)

It is stated in Muran v. Muran, 210 S.W. 2d 617 (Tex.Civ.App.-Galveston, 1948, no writ) as follows:

"It is the established law in this State that 'the wife's separate ownership of property, although standing in the name of her husband or appearing on record to be community property, may be proven as any other fact by any competent evidence, including parol evidence, surrounding circumstances, and declarations of the parties.' Foster v. Christensen, Tex.Com. App., 67 S.W.2d 246, 249; Connor v. Boyd, Tex.Civ.App., 176 S.W.2d 212."

The Foster v. Christensen case was approved by the Supreme Court in Connor v. Boyd (writ ref'd) for want of merit. See also Von Hutchins v. Pope, 351 S.W.2d 642 (Tex.Civ.App.-Houston, 1961, writ ref'd n. r. e.); Orr v. C. U. Pope, 400 S.W. 2d 614 (Tex.Civ.App.-Amarillo, 1966, no writ).

As we construe those holdings it was intended that the surrounding circumstances and declarations of the parties might be shown by parol evidence to show the true status of the property. As stated in Paudler v. Paudler, 210 F.2d 765 (5th Cir., 1954):

"The rule is well settled in Texas that a deed conveying property to the wife in her separate right and estate creates a *prima facie* presumption that same is her separate property, in the absence of evidence to overcome such presumption; and the property so conveyed will be treated as the wife's separate property."

In other words, the general rule is that where property is purchased with either community funds or the separate funds of the husband and the husband knowingly permits the deed to be made to the wife with a recitation therein that conveyance is to the wife as her separate property (but not where consideration is shown as being paid from her separate property) such facts raise a prima facie presumption of a gift to the wife; but that presumption may be overcome by sufficient evidence. Watson v. Morgan, 91 S.W.2d 1133 (Tex.Civ.App.-Waco, 1936, writ dism'd) and the many authorities there cited.

In Henderson v. Jimmerson, 234 S.W.2d 710 (Tex.Civ.App.-Texarkana, 1950, writ ref'd n. r. e.) it is stated:

"The rule permitting parol testimony to be admitted to show that a deed absolute on its face is a mortgage, as held in the authorities cited above, has been extended to admit parol testimony to show that a deed absolute on its face was given in trust, with the qualification, however, that the consideration is executed and not contractual. Tieman v. Dyer, Tex.Civ.App., 114 S.W.2d 669; Robinson v. Faville, Tex.Civ.App., 213 S.W. 316; Kidd v. Young, 144 Tex. 322, 190 S.W.2d 65. In Jones v. Parker, supra [Tex.Civ.App., 193 S.W.2d 863, 864], this court said that 'From almost the beginning of the statehood of Texas it has been held repeatedly that a trust in land can be created by parol as well as in writing.'"

It is stated in Alexander v. Alexander, 373 S.W.2d 800 (Tex.Civ.App.-Corpus Christi, 1964, no writ) as follows:

"Although the deeds to appellant, and it is the last deed of 1944 that he must depend on here, recite conveyance to him as separate property, such recitals are not conclusive of the true character of the transactions, and are subject to be overcome by evidence. 30 Tex.Jur.2d Husband and Wife, Sec. 182, and cases cited; Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900. Kearse v. Kearse, Com. of App., 276 S.W. 690; Morris v. Neie, 212 S.W.2d 981, Tex.Civ.App. wr. ref. n. r. e. The evidence detailed above was sufficient to create an issue on this matter in the trial court. The trial judge decided this issue by finding the realty to be

·community property. We find no reason to set aside his decision."

See also Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962) where it is stated:

"Special Issues 1, 3 and 4 adequately support petitioner's theory of resulting trust. Where a transfer of property is made to one person and the purchase price is paid by another, and the transferee is a natural object of bounty of the person by whom the purchase price is paid, and the latter manifests an intention that the transferee should not have the beneficial interest in the property, a resulting trust arises. Restatement, Trusts, § 443 (1935)."

It was held in the case of Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900 (1955) presumption in favor of separate estate of wife where the deed of acquisition recites that the land is conveyed to the wife as her separate property or that consideration is from her separate estate is generally rebuttable.

Finding no error, the judgment of the trial court is affirmed.